JUDGE STANTON

# 13 CIV 1665

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

DANIEL RAVICHER, derivatively on behalf of BANK OF AMERICA CORPORATION, JPMORGAN CHASE & CO., and WELLS FARGO & COMPANY,

               Plaintiff,

v.

BRIAN T. MOYNIHAN, BRUCE R. THOMPSON, NEIL A. COTTY, SHARON L. ALLEN, MUKESH D. AMBANI, SUSAN S. BIES, JACK O. BOVENDER, FRANK P. BRAMBLE, VIRGIS W. COLBERT, CHARLES K. GIFFORD, CHARLES O. HOLLIDAY, JR., LINDA P. HUDSON, MONICA C. LOZANO, THOMAS J. MAY, DONALD E. POWELL, CHARLES O. ROSSOTTI, ROBERT W. SCULLY, R. DAVID YOST, EDWARD P. O' KEEFE, JAMES DIMON, JAMES A. BELL, CRANDALL C. BOWLES, STEPHEN B. BURKE, DAVID M. COTE, JAMES S. CROWN, TIMOTHY P. FLYNN, ELLEN V. FUTTER, LABAN P. JACKSON, JR., LEE R. RAYMOND, WILLIAM C. WELDON, MARIANNE LAKE, MARK W. O'DONOVAN, STEPHEN CUTLER, JOHN G. STUMPF, JOHN D. BAKER II, ELAINE L. CHAO, JOHN S. CHEN, LLOYD H. DEAN,  E. ENGEL, ENRIQUE HERNANDEZ, JR., DONALD M. JAMES, CYNTHIA H. MILLIGAN, NICHOLAS G. MOORE, FEDERICO F. PEÑA, PHILIP J. QUIGLEY, HOWARD V. RICHARDSON, JUDITH M. RUNSTAD, STEPHEN W. SANGER, TIMOTHY J. SLOAN, RICHARD D. LEVY, and JAMES M. STROTHER,

               Defendants,

   and

BANK OF AMERICA CORPORATION, JPMORGAN CHASE & CO., and WELLS FARGO & COMPANY, all Delaware corporations,

               Nominal Defendants.

ECF CASE

CASE NO.



**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Daniel Ravicher ("Plaintiff") brings this shareholder derivative action on behalf

of nominal defendants BANK OF AMERICA CORPORATION ("BAC"), JPMORGAN CHASE

& CO. ("JPM"), and WELLS FARGO & COMPANY ("WFC") (collectively "Banks") against

their directors and officers for breach of fiduciary duty. Plaintiff makes the allegations

concerning self upon personal knowledge and others upon information and belief.

## NATURE AND SUMMARY OF THE ACTION

1.      The Banks are aiding and abetting one of the largest frauds in history by

continuing to provide a critical line of credit to Herbalife Ltd. ("HLF") after knowing that HLF is

an illegal pyramid scheme. The failure of the directors and officers of the Banks to withdraw the

line of credit propping up the HLF fraud after having express knowledge thereof exposes the

Banks to substantial criminal and civil liability. As a shareholder and an attorney, Plaintiff

notified the CEO and General Counsel of each Bank in writing of the HLF fraud and asked that

they cease all involvement therewith. Plaintiff's demands have been ignored. As such, Plaintiff

brings this action on behalf of the Banks to have the Court order their directors and officers to

cease aiding and abetting the HLF fraud, including by withdrawing the line of credit thereto.

## PARTIES

2.      Plaintiff, a citizen of the great state of Florida, is a shareholder of BAC, JPM and

WFC, was a shareholder of each at the time of the beginning of the wrongdoing alleged herein,

and has been a shareholder of each continuously since that time.

3.      Nominal Defendant BAC is a Delaware corporation with its principal executive

offices in Charlotte, North Carolina. Defendant BRIAN T. MOYNIHAN is Chief Executive

Officer, President and Director of BAC, defendant BRUCE R. THOMPSON is Chief Financial Officer of BAC, defendant NEIL A. COTTY is Chief Accounting Officer of BAC, defendant EDWARD P. O' KEEFE is General Counsel of BAC, and defendants SHARON L. ALLEN, MUKESH D. AMBANI, SUSAN S. BIES, JACK O. BOVENDER, FRANK P. BRAMBLE, VIRGIS W. COLBERT, CHARLES K. GIFFORD, CHARLES O. HOLLIDAY, JR., LINDA P. HUDSON, MONICA C. LOZANO, THOMAS J. MAY, DONALD E. POWELL, CHARLES O. ROSSOTTI, ROBERT W. SCULLY, and R. DAVID YOST are all Directors of BAC. None of these individuals are citizens of the great state of Florida.

4.     Nominal Defendant JPM is a Delaware corporation with its principal executive offices in New York, New York. Defendant JAMES DIMON is JPM's Chief Executive Officer and Chairman of the Board of Directors, defendant MARIANNE LAKE is Executive Vice President and Chief Financial Officer of JPM, defendant MARK W. O'DONOVAN is Managing Director and Corporate Controller of JPM, defendant STEPHEN CUTLER is General Counsel of JPM, and defendants JAMES A. BELL, CRANDALL C. BOWLES, STEPHEN B. BURKE, DAVID M. COTE, JAMES S. CROWN, TIMOTHY P. FLYNN, ELLEN V. FUTTER, LABAN P. JACKSON, JR., LEE R. RAYMOND, and WILLIAM C. WELDON are all Directors of JPM. None of theses individuals are citizens of the great state of Florida.

5.     Nominal Defendant WFC is a Delaware corporation with its principal executive offices in San Francisco, California. Defendant JOHN G. STUMPF is Chairman, President and Chief Executive Officer of WFC, defendant TIMOTHY J. SLOAN is Senior Executive Vice President and Chief Financial Officer of WFC, defendant RICHARD D. LEVY is Executive Vice

President and Controller of WFC, defendant JAMES M. STROTHER is General Counsel of

WFC, and defendants JOHN D. BAKER II, ELAINE L. CHAO, JOHN S. CHEN, LLOYD H.

DEAN, SUSAN E. ENGEL, ENRIQUE HERNANDEZ, JR., DONALD M. JAMES, CYNTHIA

H. MILLIGAN, NICHOLAS G. MOORE, FEDERICO F. PEÑA, PHILIP J. QUIGLEY,

HOWARD V. RICHARDSON, JUDITH M. RUNSTAD and STEPHEN W. SANGER are all

Directors of WFC. None of theses individuals are citizens of the great state of Florida.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over the claim asserted herein pursuant to

28 U.S.C. § 1332 because complete diversity exists between Plaintiff and Defendants and the

amount in controversy exceeds $75,000. This action is not a collusive action designed to confer

jurisdiction on a court of the United States that it would not otherwise have.

7.      The Court has jurisdiction over each Defendant because they either are citizens of

New York, New York, or have sufficient minimum contacts with New York so as to render the

exercise of jurisdiction by the New York courts permissible under traditional notions of fair play

and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because one or more

of the Defendants either resides in or maintains executive offices in this District and defendants

regularly conduct business in this District and/or have received compensation in this District by

engaging in numerous activities and conducting business here that had an effect in this District.

## SUBSTANTIVE ALLEGATIONS

9.      Herbalife Ltd. ("HLF") describes itself as "a network marketing company [that]

sells weight management, healthy meals and snacks, sports and fitness, energy and targeted

nutritional products, and personal care products worldwide." In truth, HLF is a fraudulent

pyramid scheme because it has a compensation program based primarily on providing payments

to participants for the recruitment of new participants, not on the retail sale of products or

services.

> 10.   As described by the Ninth Circuit:

> Pyramid schemes are said to be inherently fraudulent because they must
> eventually collapse. *See, e.g.*, *S.E.C. v. International Loan Network, Inc.*, 968 F.2d
> 1304, 1309 (D.C.Cir. 1992). Like chain letters, pyramid schemes may make
> money for those at the top of the chain or pyramid, but "must end up
> disappointing those at the bottom who can find no recruits." *In re Koscot
> Interplanetary, Inc.*, 86 F.T.C. 1106, 1181 (1975), *aff'd mem. sub nom.*, *Turner v.
> F.T.C.*, 580 F.2d 701 (D.C.Cir.1978).

> The Federal Trade Commission has established a test for determining what
> constitutes a pyramid scheme. Such contrivances

>> are characterized by the payment by participants of money to the company
>> in return for which they receive (1) the right to sell a product and (2) the
>> right to receive in return for recruiting other participants into the program
>> rewards which are unrelated to sale of the product to ultimate users.

> *Id.* (emphasis in original). The satisfaction of the second element of the *Koscot*
> test is the *sine qua non* of a pyramid scheme: "As is apparent, the presence of this
> second element, recruitment with rewards unrelated to product sales, is nothing
> more than an elaborate chain letter device in which individuals who pay a
> valuable consideration with the expectation of recouping it to some degree via
> recruitment are bound to be disappointed." *Id.* We adopt the *Koscot* standard here
> and hold that the operation of a pyramid scheme constitutes fraud for purposes of
> several federal antifraud statutes.

*Webster v. Omnitrition Intern., Inc.*, 79 F. 3d 776, 781-82 (9th Cir 1996).

> 11.   With respect to HLF specifically, a California court found in 2009 that,

"Herbalife's entire business model appears to incentivize primarily the payment of compensation

that is 'facially unrelated to the sale of product to the ultimate users' because it is paid based on the suggested retail price of the amount ordered [from Herbalife], rather than based on actual sales to consumers.'" *Herbalife v. Ford*, Memorandum & Order Regarding Cross-Motions for Summary Judgment, No. CV 07-02529, slip op. at 16 (C.D. Cal. Aug. 25, 2009). Thus, this factual finding by the California state court satisfies the Ninth Circuit's description of a pyramid scheme, meaning HLF is indeed, without question, a fraud.

12.     HLF has also been found to be a pyramid by a Belgian court. Plaintiff is aware of no case where HLF has been found to not be a pyramid scheme and HLF has not produced any independent attorney opinion on the issue. Instead, HLF uses misleading, scientifically unsound reports by hired-gun experts who are not attorneys to distract and confuse the public regarding the legality of its business model.

13.     In short, HLF's pyramid scheme constitutes a fraud in violation of federal law, including Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), § 12(2) of the Securities Act of 1933, § 10 of the Securities Exchange Act of 1934 and/or various RICO predicate acts, amongst others. HLF's business also violates various state and international laws.

14.     In order to commit its fraud, HLF needs credit. Related thereto, on March 9, 2011, HLF issued a press release titled, "HERBALIFE LTD ANNOUNCES NEW $700 MILLION CREDIT FACILITY," that stated:

> LOS ANGELES, March 9, 2011 — Herbalife Ltd (NYSE: HLF) today announced that it has entered into a new $700 million senior secured revolving credit facility.
>
> The new five year facility matures on March 9, 2016. This new facility was arranged by Bank of America Merrill Lynch and JP Morgan Securities LLC as joint lead arrangers and joint book managers.  Banks included in the new facility are Bank of America N.A. as

Administrative Agent, JP Morgan Chase Bank N.A. as Syndication Agent and Rabobank International as Documentation Agent. Other participating lenders include HSBC, Key Bank, Union Bank, Wells Fargo Bank, ING and Comerica. The new facility replaces a $300 million senior secured credit facility entered into in July 2006 that was originally comprised of a $100 million revolving credit facility (which was later amended in 2007 to increase the revolver capacity by $150 million to $250 million) and a $200 million term loan due to expire in 2012 and 2013, respectively.

15.    As disclosed in the March 9, 2011, press release, BAC and JPM were the joint lead arrangers and joint book managers for the new credit facility, while WFC was another participating lender.

16.    The new credit facility announced on March 9, 2011, was more than twice the size of the previous credit facility. By touting the new line of credit so broadly, HLF conceded it was extremely material to their business.

17.    Then, not even a year and a half later, HLF needed to increase its credit limit even further in order to keep its fraud from collapsing. To wit, on July 30, 2012, HLF issued a press release that said in part:

LOS ANGELES-- ...

Announces a New $500 million Term Note Added to its Credit Facility

The company amended its credit facility to add a new $500 million term loan to the existing $700 million senior credit facility entered into in March 2011. This new facility was arranged by Bank of America Merrill Lynch with RaboBank, HSBC and Wells Fargo as joint lead arrangers and joint book managers.

18.    BAC was again a lead arranger and book manager for this additional half a billion dollar line of credit, but this time WFC was the joint lead arranger and joint book manager, not JPM.

19.    While the defendants cannot be blamed for playing an unwitting role in HLF's

fraud, on February 5, 2013, Plaintiff sent a letter to the CEO and General Counsel of each of BAC, JPM and WFC describing the HLF fraud and the Banks' role therein. Plaintiff identified himself as a shareholder and an attorney in the letters. Plaintiff also described in the letters the HLF fraud and each Bank's role therein. Plaintiff then closed each letter by making a demand that each Bank withdraw its involvement with the HLF fraud, and particularly withdraw the line of credit extended thereto.

20.     The letters, attached hereto as Exhibit A, were sent by Priority Mail with delivery confirmation and the United States Postal Service confirms that each letter was delivered on February 7, 2013. The delivery confirmations are attached hereto as Exhibit B. Thus, as of February 7, 2013, the defendants had actual knowledge of the HLF fraud and their continued involvement therein after that date was no longer unwitting.

21.     WFC replied to Plaintiff's letter with two letters. First, on February 11, 2013, WFC sent a letter to Plaintiff confirming that Plaintiff's February 5 letter had been received and that a response by WFC will be forthcoming. Then, on February 14, 2013, WFC sent a letter to Plaintiff stating, in part, "we are unable to take actions on our customers' accounts based on information received from third parties." This second letter conclusively indicates that any future attempt to demand WFC cease aiding and abetting the HLF would be futile. The letters from WFC to Plaintiff are attached hereto as Exhibit C.

22.     Neither BAC nor JPM has responded to Plaintiff's February 5 letters. After being ignored for over a month, any further attempt to contact them would be futile.

23.     A party is guilty of aiding and abetting a fraud if (1) there is a fraud, (2) the party

has knowledge of the fraud, and (3) the party provides substantial assistance to advance the fraud's commission. The knowledge requirement of an aiding and abetting fraud claim is satisfied by actual knowledge of the underlying fraud. A party provides "substantial assistance" to advance of a fraud's commission if it affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed.

24.     The defendants and the Banks they operate are now, as of February 7, 2013, guilty of aiding and abetting the HLF fraud because (1) HLF is a fraud, (2) Plaintiff provided them with actual knowledge of HLF's fraud, and (3) they continue to provide "substantial assistance" to the HLF fraud through the maintenance of the critical line of credit thereto. Thus, the Banks may now be pursued for violations of federal, state and international laws and any third party injured by HLF's fraud may now have a claim against the Banks. By failing to cease aiding and abetting of the HLF fraud after receiving notice thereof, the defendants are in breach of their duties to the Banks, because that failure has now subjected, and continues to subject, the Banks to substantial risk of both criminal and civil liability.

## COUNT I

### Against the Individual Defendants for Breach of Fiduciary Duty

25.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

26.     The individual defendants owe their respective companies fiduciary obligations. Specifically, the individual defendants owe their respective companies the highest obligation of due care, reasonable inquiry, oversight and supervision.

*Ravicher v. Moynihan, et al.*                                        March 13, 2013
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT                              Page 10

27.    The individual defendants have breached their fiduciary duties of due care, reasonable inquiry, oversight and supervision by knowingly failing to cease aiding and abetting the HLF fraud, including by continuing to maintain the critical line of credit thereto. This failure cannot be a good faith exercise of prudent business judgment to protect and promote their respective companies' corporate interests, as it is an illegal act in and of itself.

28.    As a direct and proximate result of the individual defendants' failure to fulfill their fiduciary obligations, BAC, JPM and WFC are now exposed to significant criminal and civil liability. Thus, the individual defendants are liable to their respective companies for that failure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court enter judgment as follows:

A.    Permanently enjoin the individual defendants from continuing to aid and abet the HLF fraud in any manner, including by maintaining the current line of credit being provided by the nominal defendants to HLF.

B.    Award Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses.

C.    Award such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

*Ravicher v. Moynihan, et al.*                                                    March 13, 2013
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT                          Page 11

Dated:  March 13, 2013                          Respectfully Submitted,

                                                LAW OFFICES OF DANIEL B. RAVICHER

                                                _Daniel B. Ravicher_

                                                Daniel B. Ravicher
                                                1375 Broadway, Suite 600
                                                New York, NY 10018
                                                (646) 470-2641

*Ravicher v. Moynihan, et al.*                                    March 13, 2013
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT                          Page 12

## **VERIFICATION**

I, Daniel Ravicher, hereby verify that the allegations in the Complaint are true and correct

to the best of my knowledge, information and belief.

Date:   __March 13, 2013__          __Daniel B. Ravicher__
                                    Daniel Ravicher

EXHIBIT A

Daniel B. Ravicher, Esq.
1375 Broadway, Suite 600
New York, NY 10018

February 5, 2013

Brian T. Moynihan, CEO
Edward P. O' Keefe, General Counsel
Bank of America Corporate Center
100 North Tryon Street
Charlotte, NC 28255

Re:    Please Investigate and Cease Involvement With Herbalife's Pyramid Scheme

Dear Messrs. Moynihan and O' Keefe:

As a shareholder and attorney, I write to make you aware that Bank of America may be party to an illegal pyramid scheme. Namely, there is substantial evidence that Herbalife Ltd. is an illegal pyramid scheme operating under the guise of a health products company. Upon investigation, however, it appears as though Herbalife may pay more money to participants in its business to recruit new participants than it does for sale of its products. This is illegal. *See, e.g., Webster v. Omnitrition Intern., Inc.*, 79 F. 3d 776 (9th Cir. 1996).

Bank of America is aiding Herbalife in maintaining and perpetuating that scheme and thus, may itself be liable for injury caused by it. Specifically, Bank of America provides Herbalife a revolving credit facility that enables Herbalife to maintain and extend its scheme.

As soon as practical, please confirm to me that you have investigated these issues and ceased all involvement with or support of Herbalife. If you choose not to investigate Herbalife or not to cease your involvement therewith, please provide me the legal basis justifying your decision, including at minimum the opinion letter from your counsel upon which you rely. I believe you have a fiduciary duty to me and other shareholders to ensure Bank of America is not involved with criminal activity.

But more importantly, why would you even want to risk injuring Bank of America's stellar reputation by being involved with Herbalife? They cannot be so important a customer that you would jeopardize your good name and reputation by being involved with such an unsavory company.

Thank you, in advance, for your time and attention to this very important issue.

Sincerely,

Daniel B. Ravicher

Daniel B. Ravicher, Esq.
1375 Broadway, Suite 600
New York, NY 10018

February 5, 2013

James Dimon, CEO
Stephen Cutler, General Counsel
JPMorgan Chase & Co.
270 Park Avenue
New York, NY 10017

Re:   Please Investigate and Cease Involvement With Herbalife's Pyramid Scheme

Dear Messrs. Dimon and Cutler:

As a shareholder and attorney, I write to make you aware that JP Morgan Chase Bank may be party to an illegal pyramid scheme. Namely, there is substantial evidence that Herbalife Ltd. is an illegal pyramid scheme operating under the guise of a health products company. Upon investigation, however, it appears as though Herbalife may pay more money to participants in its business to recruit new participants than it does for sale of its products. This is illegal. *See, e.g.*, *Webster v. Omnitrition Intern., Inc.*, 79 F. 3d 776 (9th Cir. 1996).

JP Morgan Chase Bank is aiding Herbalife in maintaining and perpetuating that scheme and thus, may itself be liable for injury caused by it. Specifically, JP Morgan Chase Bank provides Herbalife a revolving credit facility that enables Herbalife to maintain and extend its scheme.

As soon as practical, please confirm to me that you have investigated these issues and ceased all involvement with or support of Herbalife. If you choose not to investigate Herbalife or not to cease your involvement therewith, please provide me the legal basis justifying your decision, including at minimum the opinion letter from your counsel upon which you rely. I believe you have a fiduciary duty to me and other shareholders to ensure JP Morgan Chase Bank is not involved with criminal activity.

But more importantly, why would you even want to risk injuring JP Morgan Chase Bank's stellar reputation by being involved with Herbalife? They cannot be so important a customer that you would jeopardize your good name and reputation by being involved with such an unsavory company.

Thank you, in advance, for your time and attention to this very important issue.

Sincerely,

Daniel B. Ravicher

Daniel B. Ravicher, Esq.
1375 Broadway, Suite 600
New York, NY 10018

February 5, 2013

John G. Stumpf, CEO
James M. Strother, General Counsel
Wells Fargo & Company
420 Montgomery Street
San Francisco, CA 94163

Re:   Please Investigate and Cease Involvement With Herbalife's Pyramid Scheme

Dear Messrs. Stumpf and Strother:

As a shareholder and attorney, I write to make you aware that Wells Fargo may be party to an illegal pyramid scheme. Namely, there is substantial evidence that Herbalife Ltd. is an illegal pyramid scheme operating under the guise of a health products company. Upon investigation, however, it appears as though Herbalife may pay more money to participants in its business to recruit new participants than it does for sale of its products. This is illegal. *See, e.g.*, *Webster v. Omnitrition Intern., Inc.*, 79 F. 3d 776 (9th Cir. 1996).

Wells Fargo is aiding Herbalife in maintaining and perpetuating that scheme and thus, may itself be liable for injury caused by it. Specifically, Wells Fargo provides Herbalife a revolving credit facility that enables Herbalife to maintain and extend its scheme.

As soon as practical, please confirm to me that you have investigated these issues and ceased all involvement with or support of Herbalife. If you choose not to investigate Herbalife or not to cease your involvement therewith, please provide me the legal basis justifying your decision, including at minimum the opinion letter from your counsel upon which you rely. I believe you have a fiduciary duty to me and other shareholders to ensure Wells Fargo is not involved with criminal activity.

But more importantly, why would you even want to risk injuring Wells Fargo's stellar reputation by being involved with Herbalife? They cannot be so important a customer that you would jeopardize your good name and reputation by being involved with such an unsavory company.

Thank you, in advance, for your time and attention to this very important issue.

Sincerely,

Daniel B. Ravicher

EXHIBIT B

USPS.com® - Track & Confirm                                   https://tools.usps.com/go/TrackConfirmAction.action

English          Customer Service       USPS Mobile                                        Register /

**≧USPS.COM**                                                      Search USPS.com or Track Pack

Quick Tools            Ship a Package       Send Mail        Manage Your Mail         Shop         Business Solu

# Track & Confirm

GET EMAIL UPDATES

| YOUR LABEL NUMBER | SERVICE | STATUS OF YOUR ITEM | DATE & TIME | LOCATION | FEATURES |
|---|---|---|---|---|---|
| 9505510271623036592078 | Priority Mail® | Delivered | February 07, 2013, 4:46 am | SAN FRANCISCO, CA 94163 | Expected Del February 7, 2 USPS Trackin Confirmation |
| Hide Details | | | | | |
| | | Arrival at Post Office | February 07, 2013, 4:46 am | SAN FRANCISCO, CA 94188 | |
| | | Processed through USPS Sort Facility | February 07, 2013, 3:11 am | SAN FRANCISCO, CA 94188 | |
| | | Depart USPS Sort Facility | February 06, 2013 | OPA LOCKA, FL 33054 | |
| | | Processed at USPS Origin Sort Facility | February 05, 2013, 10:57 pm | OPA LOCKA, FL 33054 | |
| | | Dispatched to Sort Facility | February 05, 2013, 6:55 pm | FORT LAUDERDALE, FL 33316 | |
| | | Acceptance | February 05, 2013, 4:26 pm | FORT LAUDERDALE, FL 33316 | |
| 9505510271623036592313 | Priority Mail® | Delivered | February 07, 2013, 1:30 pm | CHARLOTTE, NC 28255 | Expected Del February 7, 2 USPS Trackin Confirmation |
| Hide Details | | | | | |
| | | Arrival at Post Office | February 07, 2013, 1:29 pm | CHARLOTTE, NC 28228 | |
| | | Processed through USPS Sort Facility | February 07, 2013, 12:39 am | CHARLOTTE, NC 28214 | |

| YOUR LABEL NUMBER | SERVICE | STATUS OF YOUR ITEM | DATE & TIME | LOCATION | FEATURES |
|---|---|---|---|---|---|
| | | Depart USPS Sort Facility | February 06, 2013 | OPA LOCKA, FL 33054 | |
| | | Processed at USPS Origin Sort Facility | February 05, 2013, 10:57 pm | OPA LOCKA, FL 33054 | |
| | | Dispatched to Sort Facility | February 05, 2013, 6:55 pm | FORT LAUDERDALE, FL 33316 | |
| | | Acceptance | February 05, 2013, 4:27 pm | FORT LAUDERDALE, FL 33316 | |
| **9505510271623036592597**  **Hide Details** | **Priority Mail®** | **Delivered** | **February 07, 2013, 11:29 am** | **NEW YORK, NY 10017** | **Expected Del February 7, 2 USPS Trackin Confirmation** |
| | | Arrival at Post Office | February 07, 2013, 10:10 am | NEW YORK, NY 10017 | |
| | | Depart USPS Sort Facility | February 07, 2013 | BETHPAGE, NY 11714 | |
| | | Processed through USPS Sort Facility | February 06, 2013, 10:58 pm | BETHPAGE, NY 11714 | |
| | | Depart USPS Sort Facility | February 06, 2013 | OPA LOCKA, FL 33054 | |
| | | Processed at USPS Origin Sort Facility | February 05, 2013, 10:57 pm | OPA LOCKA, FL 33054 | |
| | | Dispatched to Sort Facility | February 05, 2013, 6:55 pm | FORT LAUDERDALE, FL 33316 | |
| | | Acceptance | February 05, 2013, 4:27 pm | FORT LAUDERDALE, FL 33316 | |

USPS.com® - Track & Confirm

https://tools.usps.com/go/TrackConfirmAction.action

| YOUR LABEL NUMBER | SERVICE | STATUS OF YOUR ITEM | DATE & TIME | LOCATION | FEATURES |
|---|---|---|---|---|---|

**GET EMAIL UPDATES     PRINT DETAILS**

**Check on Another Item**

What's your label (or receipt) number?

**LEGAL**
Privacy Policy ›
Terms of Use ›
FOIA ›
No FEAR Act EEO Data ›

**ON USPS.COM**
Government Services ›
Buy Stamps & Shop ›
Print a Label with Postage ›
Customer Service ›
Site Index ›

**ON ABOUT.USPS.COM**
About USPS Home ›
Newsroom ›
Mail Service Updates ›
Forms & Publications ›
Careers ›

**OTHER USPS SITES**
Business Customer Gateway ›
Postal Inspectors ›
Inspector General ›
Postal Explorer ›

Copyright© 2013 USPS. All Rights Reserved.

03/06/2013 01:02 AM

EXHIBIT C



**National Business Banking Center**
P.O. Box 340214
Sacramento, CA  95834-0214

February 11, 2013


Daniel B. Ravicher, Esq.
1375 Broadway, Suite 600
New York, NY 10018


Dear Daniel B. Ravicher, Esq.:

Thank you for writing to us with your questions addressed to John Stumpf dated February 5, 2013. Your letter has been received by our Customer Correspondence Department. Customer feedback is very important to us and we appreciate the opportunity to review your concerns.

We are currently researching the items brought to our attention in your letter and I will respond to you within 10 business days.

In the meantime, if we can assist you in any way, please contact our National Business Banking Center in writing at the address provided above.

Thank you for contacting Wells Fargo.


Sincerely,

D. Green
Senior Correspondence Specialist
Wells Fargo Customer Connection



**National Business Banking Center**
P.O. Box 340214
Sacramento, CA  95834-0214

February 14, 2013

Daniel B. Ravicher, Esq.
1375 Broadway, Suite 600
New York, NY 10018

Subject: Information regarding business relationship with Herbalife

Dear Daniel B. Ravicher, Esq.:

Your correspondence addressed to John Stumpf dated February 5, 2013, was received for review and response. We appreciate the opportunity to serve your business needs.

Thank you for taking the time to contact us with your concerns about Herbalife. We certainly understand your concerns regarding this matter. However, we are unable to take actions on our customers' accounts based on information received from third parties. We are also unable to provide any account status updates for any accounts in which you are not an authorized signer.

If you have additional questions, you may contact our National Business Banking Center in writing at the address provided above.

Thank you for contacting Wells Fargo.

Sincerely,

D. Green
Senior Correspondence Specialist
Wells Fargo Customer Connection